IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PATRICIA BALDERAS, | § | |
| | § | |
| *Plaintiff*, | § | 5-16-CV-00479-FB-RBF |
| | § | |
| vs. | § | |
| | § | |
| FRONTIER ENTERPRISES, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Motion for Summary Judgment, Dkt No. 22, and the Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. No. 29, filed by Defendant Frontier Enterprises, Inc. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Rules CV-72 and 1(c) and (d) to Appendix C of the Local Rules for the United States District Court for the Western District of Texas. Dkt. No. 26. The Court has federal question jurisdiction over this case involving claims under Title VII of the Civil Rights Act of 1964, as amended, *see* 28 U.S.C. § 1331, and the undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons discussed herein, the undersigned recommends that Frontier's Motion for Summary Judgment, Dkt. No. 22, be **DENIED**. In making this recommendation the Court considers Frontier's Motion, Dkt. No. 22, Plaintiff Patricia Balderas's Response, Dkt. No. 28, the case file, and the relevant law. [1] Although Balderas's Response is untimely and was filed without leave of court, the Court finds that the interests of justice merit its consideration. Accordingly,

---

[1] Frontier has chosen not to file a reply in accordance with Local Rule CV-7(f).

Frontier's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment, Dkt. No. 29, is **DENIED**.

## I.      Frontier's Motion to Strike

It is undisputed that Balderas's Response is untimely and was filed without leave of court, in contravention of the Court's prior order. Frontier filed its summary judgment motion on June 14, 2017. Balderas's response was due on or before June 28, 2017. *See* Local Rule CV-7(e). Balderas did not initially respond to the motion or request an extension of the deadline. Instead, one day before her response was due, Balderas sought leave to re-open discovery and compel the depositions of certain defense witnesses. Dkt. No. 23. On October 13, 2017, this Court issued an order denying that request. Dkt. No. 27. The Court noted in its order that "Balderas has failed to file a response to Frontier's pending motion for summary judgment" and reminded her that the failure to respond within the deadline could result in the grant of the motion as unopposed. *Id.* at 6 (citing Local Rule CV-7(e)). The Court ordered that "should Balderas desire to file a response to Frontier's pending motion for summary judgment, Balderas shall file a motion for leave within seven (7) days from the date of this Order." *Id.* (citing Fed. R. Civ. P. 6(b)(1)(B); Local Rule CV-7(b)).

On October 20, 2017, Balderas filed her response to Frontier's Motion for Summary Judgment. Dkt. No. 22. Balderas's response was not accompanied by a request for leave, as previously ordered by the Court. Accordingly, on October 27, 2017, Frontier moved to strike Balderas's response for failure to comply with the Court's prior order. Dkt. No. 29. In its Motion to Strike, Frontier requests that the Court consider its summary judgment motion as unopposed.

Balderas offers several unavailing responses to justify her failure to timely respond to the summary judgment motion. Balderas argues she chose to postpone responding to Frontier's

Motion for Summary Judgment until the discovery issue raised in her motion for leave was resolved. Dkt. No. 33 at 2. But absent leave of court, the local rules governed Balderas's response deadline. *See* Local Rule CV-7(e)(2). Balderas cannot unilaterally stay her response deadline simply because a motion addressing another issue is pending. Balderas also argues that her attorney lacked adequate time to prepare a motion for leave because a full response to Frontier's motion required a large amount of time, as apparently demonstrated by Balderas's 31-page response. Dkt. No. 33 at 4-5; *see also* Guerra Aff. ¶ 11. Balderas, however, did not seek to remedy the situation by filing a motion for leave—even after Frontier brought this omission to her attention. Moreover, Balderas only further highlights her repeated non-compliance with the Court's local rules, which expressly limit responses to dispositive motions to 20 pages, "[u]nless otherwise authorized by the court." Local Rule CV-7(e).

Balderas neither sought nor obtained leave of court to file a response more than four months past the deadline. Nor did she demonstrate good cause or excusable neglect for failing to timely file a response or a motion for leave as required by the Court's prior order. For all of these reasons, the Court could decline to consider her summary judgment Response. *See, e.g., Schwarz v. Potter*, No. 1-04-CV-075-C, 2005 WL 1148734 at * 1 (N.D. Tex. May 16, 2005) (refusing to consider untimely summary judgment response filed without leave of court). Nevertheless, in the interests of justice, the Court will consider Balderas's Response, Dkt. No. 28, including her summary judgment evidence when evaluating the merits of Frontier's Motion for Summary Judgment. *See, e.g., Mata v. United States*, No. SA:13-CV-220-DAE, 2014 WL 37638, at *2 (W.D. Tex. Jan. 3, 2014) (noting that "[t]he decision whether to apply [a local] rule strictly or to overlook any transgression is generally left to the court's discretion") (quotation marks omitted).

## II.     Facts Supported by the Summary Judgment Record

This is a sexual harassment case brought by Balderas, a former waitress at one of Frontier's Jim's Restaurants located in San Antonio, Texas. Balderas Dep. 33:8-35:5. Balderas began her employment with Frontier on December 1, 2014. *Id.* When she started work, she received a copy of Frontier's employee handbook, which expressly prohibits sexual harassment. *Id.* 49:2-50:2; *see also* Handbook at Ex. A-3 to Resp. According to the anti-harassment policy in the handbook, employees who experience sexual harassment are directed to first advise the harasser that the behavior is inappropriate, if possible, and then report the incident to "appropriate Company management." Handbook at 5. According to this policy, an employee's "first contact normally is [their] immediate Supervisor, however, if [they] prefer, [they] can speak directly to the Human Resources Director." *Id.*

Notwithstanding Frontier's anti-harassment policy, Balderas testified that she and other female waitresses were repeatedly harassed, primarily by a cook named Daniel Jimenez.[2] Balderas Dep. 54:14-55:7; 59:6-12; 60:15-62:6. Specifically, Balderas testified that Jimenez would refer to her and other waitresses as "bitches" and "sluts" on a daily basis, would regularly curse at them in the presence of customers, and would throw food and plates in their direction. *Id.* Balderas's fellow waitress Tanya Topasna confirmed that Jimenez would use "raunchy words", such as "bitch," "ho," and "dumb bitch" to "degrade" female employees on a daily basis, Topasna Dep. 20:10-21:12, and that male employees were not treated in this manner. *Id.* 46:19-

---

[2] Although Balderas argues in her Response that the verbal abuse was perpetrated by several different cooks, she specifically testified that "Daniel [Jimenez] was the one doing all the verbal abuse. Nobody else but Daniel." *Id.* 61:10-21.

25.[3] According to Balderas, much of this abuse occurred within the hearing of assistant manager Christine Lickert. Balderas Dep. 61:15-64:9. In accordance with Frontier's anti-harassment policy, Balderas testified that she would regularly lodge complaints with both Lickert and Frontier's other assistant manager Aaron Cortez. *Id.* On some occasions Lickert and Cortez would either simply instruct Jimenez to "behave already, be nice" or promise to verbally address the matter with Jimenez. *Id.* But Jimenez's behavior, according to Balderas, never changed. *Id.* Other times, Balderas contends that management refused to even listen to her complaints. *Id.* 88:11-21 (discussing one instance where Lickert "hollered" at her "real ugly" to get out of the kitchen when Balderas attempted to report Jimenez).

At some point during the middle of her employment, Balderas contacted human resources and spoke to a district manager in an effort to obtain a transfer to another Jim's location. *Id.* 67:1-69:8; 70:20-25. During this conversation, Balderas contends she generally "talked to [the district manager] about what was happening at the restaurant." *Id.* The district manager, in response, informed Balderas that he would discuss the matter with the restaurant's general manager, Lynn Hadsall. *Id.* The next day, Balderas explains, Hadsall confronted her about the transfer request, informing Balderas that she was never to "go over [her] head." *Id.* 69:9-14. Balderas testified that Hadsall made this decision despite knowing that she was "having problems" at the restaurant and "wasn't comfortable there." *Id.* 75:16-17. This caused Balderas to feel "threatened" and believe that she needed to stay quiet in order to keep her job. *Id.* 69:15-70:19.

---

[3] Topasna also testified that assistant manager Aaron Cortez would unsnap her bra at least every other night. Topasna Depo. 43:14-44:2. Balderas, however, never alleges that she was sexually harassed by Cortez or any other supervisor.

On the evening of February 12, 2017, as Balderas was walking through the restaurant's kitchen she overheard cook Albert Gallegos ask Jimenez "when are you going to ask Patricia that you want to eat out her pussy." *Id.* 56:1-6. Topasna testified to overhearing Gallegos make a comment along these lines. Topasna Dep. 40:20-41:9. Balderas, in response, complained to Cortez, who verbally discussed the matter with Jimenez. Balderas Dep. 64:22-65:5. The next day Jimenez confronted Balderas, telling her "next time you're walking through my kitchen and you hear . . . your name being called out, just keep on walking, that's my kitchen . . . the conversation does not involve you, just mind your own business even if your name is being called out." *Id.* 64:22-66:3. Balderas thereafter asserts that she discussed the matter with Lickert, explaining that she feared Jimenez and Gallegos would retaliate against her. *See* Balderas EEOC Charge at Ex. 8 to Mot.[4] According to Balderas, Lickert informed her that she has received "numerous complaints" against Jimenez and promised that Jimenez would be terminated. *Id.*

Jimenez, however, was not terminated. Balderas continued to work for Frontier for a few more weeks, up until March 4, 2017. As a result of Jimenez's conduct, Balderas testified, she suffered anxiety, panic attacks, and elevated blood pressure, causing her to be hospitalized on one occasion. Balderas Dep. 74:23-75:2; 86:7-20; 92:23-95:96:3.

On March 4, 2017, Balderas contacted Frontier's Human Resources Manager Wayne Shirley, Shirley Aff. ¶ 3, because she "felt like [she] wasn't being protected by the management," "nothing was going to change," and the work atmosphere was negatively affecting her health. Balderas Dep. 86:7-88:3. During this meeting, Balderas informed Shirley for the first time about the sexual remark made regarding her by Gallegos and Jimenez. Shirley

---

[4] Balderas swore under penalty of perjury to the allegations in the EEOC Charge, and it is therefore treated as evidence in deciding Frontier's Motion. *See, e.g., Broich v. Inc. Vill. of Southampton*, 462 Fed. App'x 39, 43 (2d Cir. 2012).

Aff. ¶ 4. Balderas did not report any other instances of sexual harassment, only that Jimenez had been "rude" and "ugly" to her. *Id.* ¶¶ 4-5. At the close of the meeting, Shirley inquired about the relief sought by Balderas. *Id.* ¶ 5. Balderas, in response, informed Shirley that although she had previously desired a transfer, she was not interested in working for Frontier any longer. *Id.* Balderas then handed Shirley a pre-typed letter of resignation, which provided:

> I, Patricia Balderas, am resigning from Jims Restaurants as of March 04, 2015. The reason for this resignation is due to the hostility from other employees, lack of communication between my managers and self, and sexual harassment. A claim that I have taken up with my GM, and have not seen any consequences for the wrong doer.

Ex. 1C to Mot.

On September 25, 2015, Balderas filed a Charge of Discrimination with the EEOC, claiming that Frontier discriminated against her on the basis of sex and retaliated against her. *See* Balderas EEOC Charge. In her Charge, Balderas asserts that "[d]ue to [her] numerous complaints being ignored and [her] fear of retaliation, [she] had no choice but to resign [her] employment with Jim's Restaurant." *Id.* On May 26, 2017, Balderas filed suit against Frontier for disparate treatment on the basis of sex and for hostile work environment, which allegedly culminated in her constructive discharge. Dkt. No. 1.

## III. Legal Standards

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. If, however, the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## IV.    Analysis

Frontier advances three arguments in favor of summary judgment. Frontier first seeks summary judgment on Balderas's hostile work environment claim, arguing there is no evidence

that harassment affected a term, condition, or privilege of her employment. Frontier next argues for summary judgment on Balderas's allegation that she was constructively discharged. Here Frontier urges that there is no evidence that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. Finally, in a single footnote in its motion, Frontier requests summary judgment on Balderas's disparate treatment claim, arguing that she did not administratively exhaust her claim for gender discrimination. The Court will address each argument in turn.

*Hostile Work Environment*. Balderas raises a genuine issue of material fact with respect to her hostile work environment claim. Summary judgment is therefore not warranted on this basis.

To prevail on a hostile work environment claim predicated on sexual harassment perpetrated by a co-worker, a plaintiff must prove the following five elements: (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Woods v. Delta Beverage Grp., Inc.*, 274 F.3d 295, 298 (5th Cir. 2001). Frontier moves for summary judgment with respect to the fourth element only.

For harassment to affect a term, condition, or privilege of employment for purposes of Title VII, it must be "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To determine whether an environment is sufficiently "hostile" or "abusive" to affect a term, condition, or privilege of employment, courts look at "all the circumstances,"

including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 23 (1993). "To be actionable, the environment must be 'both objectively and subjectively offensive, one that both a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hernandez v. Yellow Transp., Inc*., 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

"A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher*, 524 U.S. at 778 (citation omitted). This "sufficiently demanding" standard ensures that Title VII does not become a "general civility code," and the standard therefore filters out complaints regarding "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (quotation marks omitted). At the same time, "a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 400 (5th Cir. 2007) (plaintiff, who for over a one-year period, was "constantly" called "Taliban" or "Arab," endured other mocking remarks regarding his dietary restrictions and prayer rituals, and was often startled when another employee intentionally banged on a glass partition to his office raised a fact issue as to whether the harassment was sufficiently severe or pervasive). In other words, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Lauderdale v. Tex. Dep't of Criminal Justice, Inst'l Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (quotation marks omitted).

Here, Balderas testified, and Topasna corroborated, that Jimenez referred to her and other waitresses as "bitches," "sluts," or "hos" on a daily basis for a four month period. This evidence of daily sex-based verbal abuse, *see, e.g., Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 810 (11th Cir. 2010) (noting that when a co-worker refers to a female employee as a "bitch" or a "slut," the word is gender-derogatory), in conjunction with Jimenez's physically threatening behavior (throwing plates), and the sexually offensive remark made on February 12th, creates a genuine issue of material fact as to whether the harassment affected a "term, condition, or privilege" of Balderas's employment.[5] Moreover, Balderas submitted evidence that the harassment subjectively interfered with her work performance, causing her anxiety to spike each time she worked with Jimenez.

Accordingly, Frontier's Motion for Summary Judgment on Balderas's hostile work environment claim should be denied.

*Constructive Discharge.* Although perhaps a closer call, there is also a genuine issue of material fact as to whether Balderas was constructively discharged.

A Title VII plaintiff who successfully proves that she was constructively discharged may recover compensatory damages for events after the resignation. *See Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Constructive discharge is also a means of proving an adverse

---

[5] *See WC&M Enters., Inc.,* 496 F.3d at 400; *see also Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (trial court properly refused to grant a judgment notwithstanding the verdict where the evidence revealed that plaintiff's supervisor commented about her proclivity to engage in sexual activity or made "similarly offensive" remarks, sometimes in front of co-workers, two or three times a week for six months); *Alzuraqi v. Group 1 Auto., Inc.*, 921 F. Supp. 2d 648, 660 (N.D. Tex. 2013) (refusing to grant summary judgment on plaintiff's hostile work environment claim where plaintiff, who was of Palestinian descent, was subjected to racial or ethnic slurs three to four times per week during a six-month period); *C.f. Brooks v. Firestone Polymers, L.L.C.*, 640 Fed. App'x 393, 399 (5th Cir. Mar. 2, 2016) (affirming dismissal of hostile work environment claim on the grounds that the racially offensive events, while reprehensible, were isolated, did not involve physical threats, and did not appear to have interfered with the plaintiff's work).

11

employment action, *Brown v. Liberty Mut. Grp., Inco.*, 616 Fed. App'x 654, 657 (5th Cir. 2015), which is a necessary element for a disparate treatment claim. Either way, to prove constructive discharge, "a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Kinney Shoe Corp.*, 237 F.3d at 566 (quotation marks omitted). Whether a reasonable employee under the circumstances would feel compelled to resign is "case-and fact-specific," although the Fifth Circuit considers the following factors relevant, either singly or in combination:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status]

*Haley v. All. Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (quoting *Kinney Shoe*, 237 F.3d at 566). "Ultimately, to succeed on a constructive discharge claim, the plaintiff must show a greater degree of harassment than is required for a hostile work environment claim." *Hockman v. Westward Communc'ns, LLC*, 407 F.3d 317, 332 (5th Cir. 2004).

Balderas asserts that factor six is present in this case because she was humiliated when Frontier management refused to consider her repeated complaints of sexual harassment, even yelling at her on one occasion in response, and blocked her request for a transfer. Resp. at 23-24. Having "properly utilized all of the safeguards provided by [her] employer" and finding the harassment unabated for a significant period of time, Balderas argues that a finding of constructive discharge is appropriate. *Id.* at 25-26. Frontier, on the other hand, argues that Balderas cannot establish constructive discharge as a matter of law because all of the alleged harassment was perpetrated by a co-worker; there is no evidence that Frontier's management

engaged in any badgering, harassment or humiliation, let alone intentionally did so to encourage her resignation. Mot. at 9-10.

Whether Balderas would ultimately be able to prove that she was constructively discharged is not the task presently before the Court. At this stage, where the evidence is viewed in the light most favorable to Balderas, the Court must determine whether there is a genuine issue of material fact on the issue, and here there is. Balderas presents evidence demonstrating that she made numerous reasonable, but ultimately unavailing, attempts during her employment to halt the harassment in accordance with Frontier's anti-harassment policy. Courts have found under sufficiently similar circumstances that an employer's repeated inaction or deliberate indifference may justify a finding of constructive discharge. *See, e.g., Griffin v. Delchamps, Inc*., 176 F.3d 480, 1999 WL 155682, at *11 (5th Cir. Mar. 12, 1999) (concluding that the evidence was "more than sufficient" to support the jury's finding of constructive discharge where plaintiffs made numerous complaints about the "severe and degrading" harassment perpetrated by their male co-workers over a period of several months, which were ignored, and plaintiffs testified that after each complaint the offensive behavior continued unabated); *Kimzey v. Wal-Mart Stores, Inc*., 107 F.3d 568, 574 (8th Cir. 1997) (reasonable jury could find that the "continuing harassment and management's indifference" rendered plaintiff's working conditions so intolerable she was forced to resign). Moreover, a finding of constructive discharge does not require a plaintiff to prove that the employer imposed intolerable working conditions with the "specific intent" to force the employee to resign. *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990).

Whether a reasonable person in Balderas's position would have felt compelled to resign before permitting human resources an opportunity to remedy the situation involves issues of fact

best left to a jury, in this case. Supporting this conclusion is Topasna's testimony that in her opinion Balderas had no choice but to resign, Topasna Dep. 39:22-24 & Ex. A-6 to Resp., and the fact that Frontier's anti-harassment policy directs employees to contact human resources over the employee's immediate supervisor only if it is their preference. *Compare Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 481-82 (5th Cir. 2008) (recognizing that "a reasonable employee often should pursue less drastic options before choosing to leave her job") (citing *Haley,* 391 F.3d at 652) *with Armstrong v. Woodlawn Org*., No. 96 C 1156, 1997 WL 323847, at *4 (N.D. Ill. Jun. 11, 1997) (recognizing the potential futility of lodging a formal grievance before resigning where the plaintiff's previous complaints were ignored). Accordingly, the undersigned recommends that the issue of whether a constructive discharge has occurred survive summary judgment, to be potentially renewed after Balderas presents her case in chief. *See, e.g., Snapp v. Ruan Transp. Corp*., No. 1:05CV77-M-D, 2006 WL 2455922, at *14 (N.D. Miss. Aug. 22, 2006) (recognizing that because a trial will be required on plaintiff's retaliation claim, the "better approach" is to wait until after the presentation of the evidence to determine whether the jury should be permitted to consider plaintiff's constructive discharge claim).

*Exhaustion of Disparate Treatment Claim*. Finally, it is inappropriate for the Court to rule at this time on whether Balderas administratively exhausted her disparate treatment claim. This argument was not properly developed in the Motion for Summary Judgment.

In a single footnote in its motion for summary judgment, Frontier summarily asserts that although "[i]t is somewhat unclear from Plaintiff's Complaint whether Plaintiff is trying to make a gender discrimination claim along with her sexual harassment claim," to the extent Balderas makes such a claim, "Plaintiff has waived her right to bring that claim to this Court as she has failed to exhaust her administrative remedies by filing a timely charge of with the Equal

Employment Opportunity Commission alleging gender discrimination." Mot. at 1 n.1. Balderas's Complaint, on its face, asserts two different causes of action pursuant to Title VII: one for hostile work environment and another for disparate treatment. *See* Compl. ¶¶ 14-21. Frontier fails to explain why Balderas's Charge, which includes a checked box for "sex" discrimination and alleges that she was "discriminated against based on [her] sex, female" fails to administratively exhaust a claim for gender discrimination. While the Court recognizes that both sex-based discrimination and sexual harassment claims must be administratively exhausted, *see, e.g., Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1279-1280 & n. 4 (5th Cir. 1994), Frontier's undeveloped argument does not explain why Balderas's disparate treatment claim falls outside the scope of her charge. Moreover, by including this undeveloped and unsupported argument in a footnote, Frontier did not provide Balderas with a meaningful opportunity to respond or provide the Court with a sufficient basis upon which to rule for Frontier. Accordingly, summary judgment on this issue is not appropriate.

## V.     Conclusion

For the reasons discussed above, Frontier's Motion to Strike, Dkt. No. 29, is **DENIED**. After considering Balderas's untimely filed Response, the undersigned recommends that the District Court **DENY** Frontier's Motion for Summary Judgment, Dkt. No. 22.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

   **IT IS SO ORDERED**.

   SIGNED this 12th day of February, 2018.

       RICHARD B. FARRER
       UNITED STATES MAGISTRATE JUDGE